IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-02254-PAB

PATRICIA MALONE,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Patricia Malone on September 19, 2017. Plaintiff seeks review of the final decision of defendant Andrew M. Saul (the "Commissioner")[1] denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-34, 1381-83f. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).[2]

**I. BACKGROUND**

On August 25, 2014, plaintiff applied for disability insurance benefits and

---

    [1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as defendant in this lawsuit. *See* Fed. R. Civ. P. 25(d).

    [2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

supplemental security income under Titles II and XVI of the Act, alleging a disability onset date of June 1, 2010. R. at 21, 68-69. Her claims were initially denied on January 6, 2015. R. at 82, 96-97. On July 19, 2016, plaintiff appeared at a hearing before an administrative law judge ("ALJ") to testify regarding her disability. R. at 37. On August 15, 2016, the ALJ issued a decision denying plaintiff's claims. R. at 18. The ALJ found that plaintiff had two severe impairments: Ehlers-Danlos syndrome and obesity. R. at 23.[3] The ALJ concluded that these impairments, alone or in combination, did not meet or medically equal one of the regulations' listed impairments. R. at 25. The ALJ further determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following additional limitations:

> plaintiff cannot climb ladders or scaffolds; she must avoid heights and other hazards; she can occasionally stoop, kneel, crouch, crawl, and climb stairs; and, she can frequently reach and handle.

R. at 25. Based on this RFC and in reliance on the testimony given by a vocational expert ("VE") at the July 2016 hearing, the ALJ determined that plaintiff was capable of performing her past relevant work as a software engineer. R. at 30.

On July 28, 2017, the Appeals Counsel denied plaintiff's request for review of the ALJ's decision. R. at 1. Accordingly, the ALJ's decision is the final decision of the Commissioner.

---

[3]Hypermobile Ehlers-Danlos syndrome is a genetic connective tissue disorder that causes hypermobility of the joints. *See* National Institutes of Health, *Hypermobile Ehers-Danlos syndrome*, https://rarediseases.info.nih.gov/diseases/2081/hypermobile-ehlers-danlos-syndrome (last updated Apr. 20, 2017).

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial

3

gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age,

education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff argues that the ALJ improperly disregarded the medical source statements of two of plaintiff's treating physicians, Drs. David Silverman and Nathalie Nys.  Docket No. 14 at 9.

Dr. Silverman diagnosed plaintiff with Ehlers-Danlos syndrome in June 2014. *See* R. at 510-14, 543-44, 627-30.  During his examination of plaintiff on June 9, 2014, Dr. Silverman found that plaintiff had full range of motion in her neck, shoulders, elbows, wrists, hands, and hips, with no synovitis.  R. at 514.  He recommended that plaintiff avoid yoga and discussed the possibility that plaintiff would experience pain in the future "as [a] result of abnormal joint proprioception."  *Id.*  During a follow-up visit on April 8, 2015, Dr. Silverman noted that plaintiff had "developed some chronic pain [from] her hypermobility."  R. at 747.  He recommended that plaintiff pursue cognitive behavioral therapy and pool exercise.  R. at 748.

Dr. Silverman made findings regarding plaintiff's functional limitations in September 2014 and May 2015.  *See* R. at 447, 770.  In a letter dated September 10, 2014, Dr. Silverman stated that plaintiff's Ehers-Danlos syndrome prevented her from walking or standing more than one hour out of every eight-hour period.  R. at 447.  He further noted that plaintiff "suffers injuries as a result of medical condition at least once

5

a year which render her unable to leave her house for up to two months." *Id.* On May 6, 2015, Dr. Silverman completed a medical source statement in which he opined that plaintiff could stand for only ten minutes at a time, walk or stand less than two hours in an eight-hour work day, and sit approximately four hours in an eight-hour work day. R. at 771. He also stated that plaintiff would need to take unscheduled breaks and walk every fifteen to twenty minutes for ten minutes each time. *Id.*

Dr. Nys began treating plaintiff in July 2015. *See* R. at 761. During examinations on July 23, 2015 and October 21, 2015, Dr. Nys noted that plaintiff "appear[ed] well." R. at 763, 802. At the October 21, 2015 visit, Dr. Nys diagnosed plaintiff with metatarsalgia and prescribed shoe inserts. R. at 802.[4]

In the course of treating plaintiff, Dr. Nys drafted two statements regarding plaintiff's functional limitations. *See* R. at 768, 778-82. On December 4, 2015, Dr. Nys wrote a letter stating that plaintiff's Ehlers-Danlos syndrome prevented her from doing any physical work without hurting herself and that plaintiff was "us[ing] a walker to get around." R. at 768. Dr. Nys also completed a medical source statement on July 6, 2016, in which she opined that plaintiff could sit for two hours at a time; stand for ten minutes at a time; stand or walk less than two hours in an eight-hour work day; sit for about two hours in an eight-hour work day; rarely lift less than ten pounds; occasionally twist, stoop, and climb stairs; never crouch, squat, or climb ladders; and use her hands, fingers, and arms to reach, grasp, and manipulate objects for only ten percent of an eight-hour work day. R. at 778-82. She also stated that plaintiff would need to take

---

[4]Metatarsaglia is defined as "pain in the ball of the foot." R. at 803.

approximately ten unscheduled breaks of five minutes each during an eight-hour work day, elevate her legs ninety degrees during prolonged sitting, and use a cane or other assistive device to stand or walk.  *Id.*  Finally, Dr. Nys estimated that plaintiff would be off-task at least twenty-five percent of the time during an eight-hour work day and would be absent from work more than four days per month.  *Id.* at 781.  In a pain questionnaire completed on the same date, Dr. Nys estimated that plaintiff would be off task thirty-four to sixty-six percent of the time during an eight-hour work day due to pain.  R. at 782.

The ALJ considered Drs. Silverman and Nys' opinions in determining plaintiff's residual functional capacity, but gave the opinions little weight on the ground that Drs. Silverman and Nys' assessments of plaintiff's functional limitations were "inconsistent with the record as a whole, which show[ed] conservative treatment and injuries consistent with occasionally [sic] ligament or tendon strains."  R. at 29.

Plaintiff argues that the opinions of Drs. Silverman and Nys were entitled to controlling weight because (1) Ehlers-Danlos syndrome is a rare medical condition about which plaintiff's treating physicians had specialized knowledge, and (2) the ALJ, by failing to order a consultative examination, lacked substantial evidence to disregard their opinions.  Docket No. 14 at 13-14.  Plaintiff also contends that the record evidence strongly supports Drs. Silverman and Nys' opinions.  R. at 14.  Defendant responds that the ALJ "reasonably found that [Drs. Silverman and Nys'] opinions were in direct conflict with the record as a whole and the objective medical evidence," including their own treatment records.  Docket No. 16 at 13-14.

The Tenth Circuit's "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry.[5] In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, *4. The factors that must be applied in determining what weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon

---

[5] Plaintiff does not contend that the ALJ erred at the second step of the analysis. Her only argument is that the ALJ erred by failing to give Drs. Silverman and Nys' opinions controlling weight. *See* Docket No. 14 at 9, 16.

>which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted). While a failure to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal, *Watkins*, 350 F.3d at 1300-01, an ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Instead, an ALJ need only give "good reasons" for according less weight to the treating source opinions, such as by citing to "contrary, well-supported medical evidence" in the record." *Id.*

Here, there is substantial evidence supporting the ALJ's decision to discount the opinions of Drs. Silverman and Nys regarding plaintiff's functional limitations. As summarized in the ALJ's decision and the parties' briefs on appeal, the record shows that plaintiff suffered from periods of pain and swelling in her feet, ankles, knees, hips, shoulders, back, neck, and hands. *See* R. at 28 (citing Ex. 1F/12-64, 81-99; 3F/4-6; 4F/3-10, 30-35; 5F/58-61, 76-84, 96-102; 14F/11-15), 283 (ankle edema), 321 (shoulder pain), 352 (foot pain), 404 (knee pain), 427 (ankle pain), 454 (joint pain), 840 (hand and finger pain), 880 (hip tightness); Docket No. 14 at 3-8; Docket No. 16 at 3-8.

9

However, substantial evidence also demonstrates that these conditions were "episodic and did not constantly impose significant functional limitations." R. at 28 (citing Ex. 1F/22-40, 52-64, 81-99, 133-141; 3F/6-9; 4F/30-35; 5F/79-84, 96-102; 14F/11-15, 41-47). For example, although plaintiff sought treatment for left ankle pain and edema in June 2010, she reported that her "[h]ealth ha[d] been good overall" and that she was exercising 3-4 times per week. R. at 283-84. An MRI in July 2010 revealed a severe partial tear of plaintiff's plantar fascia, mild tenosynovitis, and mild joint effusion. R. at 296. However, by August 30, 2010, plaintiff was able to walk on her foot with few symptoms. R. at 308. In June 2011, plaintiff complained of right shoulder pain, but had full range of motion "without pain or restriction." R. at 321-22. Plaintiff was referred to physical therapy and instructed to treat her symptoms with over-the-counter pain medication, ice, rest, elevation, and heat. R. at 324, 327. On August 5, 2011, plaintiff reported a seventy to eighty percent improvement, R. at 328, and was released to all activities "without restriction" on September 23, 2011. R. at 335. In July 2012, plaintiff was referred to physical therapy for moderate right knee pain. R. at 404-406. Approximately one month later, her condition was seventy percent improved. R. at 408. In July 2013, plaintiff reported moderate to severe right foot pain as a result of an injury. R. at 352. She was told to ice and elevate her foot and avoid weight bearing. R. at 354. An MRI revealed mild tendinosis, bursitis, and edema, but no ligament tears. R. at 379-80. On August 22, 2013, plaintiff reported that she was "doing a lot better" and was able to "walk on her foot . . . without too much pain." R. at 364.

Treatment records from August 2013 to May 2016 show that plaintiff continued to experience pain and mobility issues. *See, e.g.*, R. at 441, 452, 454, 736, 745, 755.

However, the records also show that these conditions were resolved through physical therapy, home exercise, and over-the-counter medication. See R. at 451, 740, 793. Plaintiff's physical therapists, Jessica Frankel and Christine Ringdahl, consistently rated plaintiff's rehabilitation potential as "good" to "excellent." R. at 758, 793, 796, 840, 848, 858.

Finally, in determining that plaintiff had the RFC to perform sedentary work, the ALJ properly relied on the opinion of Dr. Paul Barrett, an agency medical consultant, and plaintiff's statements that she was able to perform a variety of activities, including preparing simple meals, cleaning her house, using public transportation, drawing comics, and socializing with friends. See R. at 26, 28, 78-80, 227-34.

As defendant notes on appeal, Drs. Silverman and Nys' own treatment records do not contradict the ALJ's finding that plaintiff's functional limitations were not as severe as those alleged. For example, although Dr. Nys stated that plaintiff is "unable to any physical work," R. at 768, and Dr. Silverman stated that pain prevented plaintiff from completing tasks, R. at 769, both physicians examined plaintiff on only a handful of occasions and proposed conservative treatments, such as physical therapy, R. at 627, shoe inserts, R. At 802, and limitations on exercise, R. at 630; *cf. Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 823 (10th Cir. 2011) (unpublished) (stating that "[a]n ALJ can take note of the level of treatment in assessing a claimant's credibility"). While plaintiff contends that her conditions are severe and her treatment "constant and . . . intensive," Docket No. 14 at 15, neither her subjective statements concerning the limiting effects of her symptoms, to which the ALJ gave only partial weight, see R. at 26-27, nor the objective medical records cited in plaintiff's opening brief, Docket No. 14 at 3-8, are

11

sufficient to undermine the ALJ's contrary conclusion.[6]

Plaintiff's remaining arguments – that the ALJ should have given special weight to Drs. Silverman and Nys' opinions because Ehlers-Danlos syndrome is a rare condition, and that the ALJ lacked substantial evidence for his RFC findings because he failed to order a consultative examination – are also unpersuasive. Plaintiff does not explain why Drs. Silverman and Nys' specialized knowledge about Ehlers-Danlos syndrome would have any bearing on the ALJ's determination of whether their medical source opinions were consistent with the objective medical evidence. Even if a condition is common, an ALJ is not permitted to "interpose his own medical expertise over that of a physician." *Zaricor-Ritchie*, 452 F. App'x at 823. As to the latter argument, plaintiff appears to suggest that only opinions regarding her functional limitations were relevant to the ALJ's assessment of RFC. However, this argument is inconsistent with the social security regulations, which require an ALJ to "assess and make a finding about [a claimant's] residual functional capacity based on all the relevant medical or other evidence in [the] case record." 20 C.F.R. § 404.1520(e); *see also Jones v. Colvin*, 610 F. App'x 755, 758 (10th Cir. 2015) (unpublished) (finding that "the ALJ properly considered the lack of medical evidence, in particular the findings of lack of effusion and normal range of motion of the knee, in assigning little weight to Dr. Koldkolo's opinions"); *Hamlin v. Barnhart*, 365 F.3d 1208, 1222-23 (10th Cir. 2004) (indicating that medical reports should be considered as part

---

[6]Plaintiff does not challenge the ALJ's finding that plaintiff's statements regarding the limiting effects of her symptoms were not fully corroborated by the objective medical evidence. *See* R. at 27.

of RFC analysis even if they do not specifically address a claimant's functional limitations). Plaintiff also does not make any effort to show that the ALJ was required to order a consultative examination. *See Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (unpublished) ("[I]f the claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established on the record.'" (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997))). Nor does she directly challenge the specific limitations incorporated into the ALJ's ultimate assessment of RFC. For the reasons discussed above, the Court finds that there is substantial evidence in the record to support the ALJ's decision not to give controlling weight to Drs. Silverman and Nys' opinions regarding plaintiff's functional limitations.

## V. CONCLUSION

Because the Court finds that the ALJ's disability determination was supported by substantial evidence, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**.

DATED June 1, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge